**KEELS et al. v. METZLER et al.**

No. 10180.

Court of Civil Appeals of Texas. Galveston.

March 18, 1936.

Rehearing Denied May 21, 1936.

A. D. Dyess, of Houston. (Joel W. Cook, of Houston, of counsel), for appellants.

John B. Warren, of Houston, for appellees.

LANE, Justice.

This is a suit instituted in the court below by Ella Metzler, joined pro forma by her husband, E. A. Metzler, against Carl O. Keels, Perry V. Cook, and Hou-Tex Lease & Royalty Corporation, to cancel a certain deed from Ella Metzler, joined therein by her husband, conveying to Carl O. Keels minerals under an undivided one-fourth interest in 50 acres of the Joseph House League in Montgomery county, Tex., owned by her. Plaintiffs likewise prayed for the cancellation of a subsequent lease from Keels to Hou-Tex Lease & Royalty Corporation, and a judgment against all defendants for the title and possession of said lands. The grounds alleged for cancellation are, substantially, as follows: (1) That defendants Cook and Keels, acting together, fraudulently represented to plaintiffs that the minerals under said lands were worth not more than $40 per acre at the time of the execution of said mineral deed, when, as a matter of fact, said minerals had a reasonable market value of $5,000 or approximately $320 per acre; (2) that defendants Cook and Keels induced plaintiffs to execute said mineral deed by fraudulently representing to them that same conveyed only one-half of the interest actually conveyed; (3) that said Cook, who took the

acknowledgment to said deed, was pecuniarily interested in the transaction, and was therefore disqualified to take the acknowledgments thereto, for which reason the instrument, being a conveyance of Ella Metzler's separate property, was invalid; (4) that Perry V. Cook, the notary, did not examine the plaintiff, Ella Metzler, separately and apart from her husband.

Plaintiffs tendered an uncashed check for $140, representing all but $100 of the purchase price given for the deed, and prayed as above set out.

Defendants answered by general demurrer, special exceptions, all of which were overruled, general denial, a disclaimer on the part of Keels, a denial that Cook had a pecuniary interest in the transaction, he having merely lent to Keels the money with which the lands were purchased, a plea of ratification and estoppel, and a cross-action in trespass to try title.

The plaintiffs answered to the cross-action by general demurrer and general denial, and filed a supplemental petition containing general demurrer, special exceptions, general denial, and specific denial of some facts pleaded.

All demurrers and exceptions were overruled, and the cause was tried before a jury upon special issues submitted by the court.

At the close of the evidence, all defendants moved the court for an instructed verdict in their favor and in favor of said defendants on their cross-action against Ella Metzler, which motion was refused.

In answer to the special issues the jury found: (1) That defendant Perry V. Cook (the notary) was financially interested in the purchase and in the consideration paid for the deed; (2) that said Cook did not examine Ella Metzler privily and apart from her husband, nor did he explain to her the tenor and effect of said deed, nor did he ask her if she acknowledged the instrument to be her act and deed, and if she willingly signed the same for the purposes and consideration therein expressed, and if she wished to retract it; (3) that Ella Metzler did not answer to said notary the statutory questions for a wife's separate acknowledgment, in accordance with law, for a proper execution of the deed; (4) that Carl O. Keels and Perry V. Cook represented to plaintiffs that said deed conveyed only one-half of the one-eighth royalty interest owned by Mrs. Metzler, and that the plaintiffs believed such representations to be true and relied thereon in executing the deed, and would not have done so had they not so believed; (5) that plaintiffs were induced to execute and deliver the deed without reading it by reason of representations made to them by Keels and Cook that the deed conveyed one-half of the minerals under the land.

Upon the verdict of the jury and the evidence, the court rendered judgment for the plaintiffs as prayed for by them against all of the defendants, canceling the two deeds as prayed for by the plaintiffs, and decreeing that plaintiff Ella Metzler, joined by her husband, recover from all defendants, in her separate right, the title and possession of the land sued for, which is fully described in the judgment, and for a writ of possession. It is further recited in the judgment as follows:

"Plaintiffs having tendered into the Court the check of the Hou-Tex Lease and Royalty Corporation, of date March 17, 1933, and drawn on the Houston National Bank of Houston, Texas, payable to the order of the plaintiffs in the sum of $140.00, same is hereby cancelled, and annulled as an obligation payable to plaintiffs.

"It is further ordered, adjudged, and decreed that defendants recover nothing on their cross-bill herein, and that as to it, the plaintiffs go hence without day and recover their costs."

All the defendants have appealed.

■ The plaintiffs substantially alleged that the property in controversy, at the time of the transaction, was of the reasonable market value of $5,000; that plaintiffs were uneducated and unlearned people and totally ignorant of the market value of the minerals under the land; that defendants at the time were well-informed traders in oil and mineral interests, and made the buying and selling thereof their sole and only business and occupation; that defendants knew the land in controversy was underlaid with a rich oil-bearing sand, by reason whereof the land had a reasonable market value of $5,000; that the defendant Carl O. Keels had been acting as the agent and attorney in fact for the plaintiffs in respect to other property owned by them in the C. N. Pillot survey and had obtained their confidence and trust; and that defendants knew that plaintiffs were ignorant of the value of the mineral interest in the land, and acting together and for the mutual benefit of all defendants, and for the fraudulent purpose of taking advantage of plaintiffs' ignorance in that respect, and, for the fraudulent purpose

of acquiring the mineral interest of Ella Metzler in said land for an inadequate consideration, falsely represented to plaintiffs that the minerals of Ella Metzler in said land were not of any particular value and were not worth more than $40 per acre; that plaintiffs, relying on such representations, executed the deed, which they would not have done had they not so relied.

Defendants specially excepted to these allegations upon the ground that same did not constitute actionable fraud; the statement of the vendee of the value of the property he was about to purchase not constituting grounds for the cancellation of the instrument thus procured.

This special exception was by the court overruled, to which defendants in open court excepted.

Appellants insist that in overruling such special exception the court committed reversible error, in that, since defendant Keels was dealing with plaintiffs as purchaser of land owned by Mrs. Ella Metzler as her separate property, such alleged fraud did not in fact constitute actionable fraud; that the statement of the vendee of the value of the property he was about to purchase did not constitute grounds for the cancellation of the deed in question so procured.

We overrule appellants' contentions. We do not think the allegations attacked are subject to the special exception addressed to them. The facts alleged, if true, do constitute fraud and cause for the cancellation of the deed in question. Crawford v. Creel (Tex.Civ.App.) 62 S.W.(2d) 294; Spencer v. Womack (Tex.Civ.App.) 274 S.W. 175.

In Spencer v. Womack it is held that: "A false statement as to value, affirmed as an existing fact, is a misrepresentation of fact, and, when relied on and acted on by party to whom it is made, under circumstances reasonably entitling him so to treat and act on it, constitutes 'actionable fraud.'"

■ Though it be conceded that plaintiffs in the present case had opportunity to investigate the truth or falsity of the representations made by Keels as to the market value of the land in question, they were under no duty to do so, and their failure to investigate did not bar recovery for fraudulent representations. Gardner v. Dorsey (Tex.Civ.App.) 272 S.W. 266, 272.

In Gardner v. Dorsey (Tex.Civ.App.) 272 S.W. 266, 272, it is said:

"Ordinarily the expression of an opinion cannot be made the basis of an action. This, however, is not without exception. Mr. Pomeroy says:

" 'Wherever a party states a matter which might otherwise be only an opinion, and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it as such, then the statement clearly becomes an affirmation of fact, within the meaning of the general rule, and may be a fraudulent misrepresentation. The statements which most frequently come within this branch of the rule are those concerning value.' "

In support of such statement the court cites many decisions.

■ Plaintiffs substantially alleged that, upon the signing and delivery of the deed, attacked by them as having been procured by fraudulent and false representations, the defendants in consideration for it gave plaintiffs $100 in cash and a check for $140, and that plaintiffs had tendered a return of the check to the claimants under the deed.

Appellants specially excepted to such allegations upon the ground that by such pleading no tender was made of the $100 cash paid. The court overruled the exception, and appellants now assign the ruling of the court as reversible error.

We overrule the assignment. We are of opinion that the court properly overruled the special exception. However, we are not prepared to hold that, if it be conceded that such ruling was error, it constituted reversible error, as there were allegations other than that of fraud in the plaintiffs' petition which the jury found were true upon ample evidence that would entitle the plaintiffs to the recovery awarded to them by the judgment.

Mrs. Metzler, Mr. Metzler, Arthur Metzler, Emil Metzler, and Melba Metzler each testified that Mr. Metzler, the husband of Mrs. E. A. Metzler, was continuously in the room during the negotiations leading up to the execution and delivery of the deed in question, and that until Mr. Cook, the notary who purported to have taken Mrs. Metzler's acknowledgment, and Mr. Keels left the premises, said notary did not examine Mrs. Metzler separately and apart from her husband upon the occasion inquired about.

The jury found such testimony was true, and returned their verdict accordingly, notwithstanding the fact that P. V. Cook, the notary, testified that he asked Mr.

Metzler to leave the room so he could take his wife's separate acknowledgment, which he did, and, when Mr. Metzler left the room, then he explained the instrument to Mrs. Metzler and asked her all the questions required of him as a notary in taking acknowledgments, and received from her such answers to such questions as would make the acknowledgment conform to the requirements of law. Under these circumstances, it is apparent that, if the overruling of defendants' special exception was error, it was a harmless one, which would not be ground for the reversal of the judgment.

■ The court, in submitting special issues, began each with these words: "Do you find from a preponderance of the evidence." The inquiries made were (1) whether or not defendant Carl O. Keels, on March 17, 1933, represented to plaintiffs, Ella Metzler and her husband, E. A. Metzler, that the mineral interest sought to be purchased, and which would be conveyed by the deed presented to the Metzlers by Keels, conveyed only an undivided one-half of the one-eighth royalty interest owned by Mrs. Metzler in an undivided 12½-acre interest out of 50 acres; (2) whether or not such representation, if any, was made as to a fact which was material to Mrs. and Mr. Metzler in the execution of the deed in question; (3) whether or not plaintiffs, Mrs. and Mr. Metzler, believed such representation, if any, to be true and relied upon it as true; (4) whether or not Mrs. and Mr. Metzler would have executed and delivered the deed had not Carl O. Keels made the representations charged to him, if he did so make them; (5) whether or not Perry V. Cook represented to Mrs. and Mr. Metzler that the interest sought to be conveyed, and which would be conveyed by the deed prepared and presented to them by him for execution, conveyed only an undivided one-half of the royalty interest owned by Mrs. Metzler in the 50-acre tract in question.

Defendants objected to the submission of such issues upon the ground that they were duplicitous, in that they did not differentiate between representations made to and relied upon by Mrs. Metzler and those made to and relied upon by Mr. Metzler.

Appellants on appeal insist that the trial court, in submitting to the jury the special issues relating to representations applying equally to Mrs. Metzler and Mr. Metzler, erred to the prejudice of appellants, for which the judgment should be reversed.

There is no merit, we think, in the contentions made; therefore we overrule them without further comment.

■ The undisputed evidence shows that, Mr. and Mrs. Metzler having discovered that the deed in question by its terms conveyed the entire interest of Mrs. Ella Metzler in a certain 50 acres described in the deed, contrary to the representations of defendant Keels that it only conveyed one-half of such interest, Mr. Metzler had Mr. E. H. Suhr, a lawyer, to draw up the following instrument, which was signed by Carl O. Keels:

"State of Texas,
"County of Harris.

"Whereas, on the 17 day of March, A. D. 1933, Mrs. Ella Metzler and E. A. Metzler executed and delivered to Carl O. Keels a deed conveying to the said Carl O. Keels the minerals under 12½ acres of land in the Joseph House Survey in Harris County, Texas, said deed being recorded in Vol. 222, page 178 of the Contract Records of Harris County, Texas;

"Whereas, said deed is erroneous, it having been by said deed intended to convey to said Carl O. Keels only one-half of the royalties of the grantors in said deed under said 12½ acres of land, or 6¼ royalty acres in all;

"Now, therefore, know all men by these presents, that we, Mrs. Ella Metzler and E. A. Metzler and Carl O. Keels hereby and in consideration of the premises and of the facts hereinabove referred to and recorded in Vol. 222, page 178 of the Contract Records of Harris County, Texas, so that the same provides in lieu of 12½ acres, 6¼ acres, or one-half of the royalties of the said grantors therein under the said 12½ acres.

"Witness our hands this ―――― day of April, A. D. 1933.

"Carl O. Keels."

Fred Franks, witness for the plaintiffs, testified that he took the instrument to Carl O. Keels about three days after it had been prepared and asked Keels if he bought half or all of the royalties of Mrs. Metzler, and he said he only bought one-half thereof; that he then handed Keels the instrument drawn by Suhr and asked him to sign it, and that Keels said he would sign it, but that there was no notary public

there at that time; that he then asked Keels if he bought all of Mrs. Metzler's interest in the royalties and Keels said he did not; that he did not write the deed, that Perry Cook wrote it; that the next day Keels signed the instrument as prepared by Mr. Suhr. On being asked whether or not in any conversation had with Carl O. Keels, that Keels ever claimed he bought the full 12½ acres mineral interest by the deed in question, he answered, "No, Sir, he never did."

E. H. Suhr, a witness for plaintiffs, referring to the check for $140 with notation in the corner thereof "12½ acres," given as part of the purchase price of the interest in the minerals in question, testified that he had a conversation with Carl O. Keels with reference to the check, and that in such conversation Keels told him that the check was correct.

Plaintiffs offered in evidence the instrument prepared by Suhr for the purpose of showing that Keels had admitted he had purchased only one-half of Mrs. Metzler's interest in the minerals in question, and to corroborate the testimony of Franks and Suhr. Such instrument was admitted in evidence, over the objection of counsel for the defendants upon the ground that it was shown to be an effort to compromise, and therefore not admissible.

We overrule appellants' contention. We think the instrument corroborates the testimony of witnesses Franks and Suhr, and was admissible for such purpose; their testimony being that Keels admitted that he had bought only one-half and not the whole of Mrs. Metzler's interest in the minerals underlying her undivided interest of 12½ acres of the certain 50 acres described in the deed in question. We are of opinion that there is no evidence showing that the execution of the instrument in question was an effort to compromise, but, to the contrary, it, when considered together with the testimony of Franks and Suhr, shows that Keels was proposing to do only that which he thought the law would compel him to do at a suit brought by appellees, if one should be brought.

We have already discussed and disposed of the contention made by appellants relative to the introduction in evidence of the instrument signed by Carl O. Keels some days after the deed sought to be set aside was executed; therefore further discussion thereof is unnecessary.

■ Appellants' sixth contention is that the court erred in admitting in evidence, over the objection of appellants, the testimony of the witness Franks, which we have above stated, upon the ground that same was too remote in point of time and not made to the Metzlers or their agent.

We overrule such contention. It is, we think, clearly shown by the undisputed evidence that Franks, acting together with Mr. Suhr, attorney for appellees, was acting in the transaction in question as agent for appellees. We also think the testimony of Franks was material and pertinent to the issues involved in this suit.

■ We think the court properly submitted to the jury the inquiry as to whether or not Perry Cook, as notary, was financially interested in the consideration paid for such deed. There was ample evidence to authorize such inquiry.

■ By appellants' contention No. 10 they contend that the testimony of appellees' witnesses, five in number, to the effect that Perry Cook, as notary, failed to examine Mrs. Metzler separate and apart from her husband, was highly uncertain and conflicting; therefore the court erred in submitting such issue to the jury.

We overrule such contention. Mrs. Metzler, Mr. Metzler, Arthur Metzler, Emil Metzler, and Melba Metzler each testified that Mr. Metzler, the husband of Mrs. E. A. Metzler, was continuously in the room during the negotiations leading up to the execution and delivery of the deed in question, and that until Mr. Cook, the notary who purported to have taken Mrs. Metzler's acknowledgment, and Mr. Keels left the premises, said notary did not examine Mrs. Metzler separately and apart from her husband upon the occasion inquired about. The jury found such testimony was true and returned their verdict accordingly, notwithstanding the fact Perry Cook, the notary, testified that he asked Mr. Metzler to leave the room so he could take his wife's separate acknowledgment, which he did, and, when Mr. Metzler left the room, then he explained the instrument to Mrs. Metzler and asked her all the questions required of him as a notary in taking acknowledgments, and received from her such answers to such questions as would make the acknowledgment conform to the requirements of law.

It is shown that defendant Carl O. Keels, the purported purchaser, was present at all

times while the notary was engaged in taking the acknowledgment of Mrs. Metzler. His depositions were taken and introduced in evidence, and nowhere and at no time did he testify that the notary examined Mrs. Metzler separately and apart from her husband.

Under these circumstances, it seems to us that the weight and preponderance of the evidence called for the submission of the issue in question, and supports the finding of the jury, wherefore the submission was not error.

■ The finding of the jury, upon sufficient evidence, that Mrs. Metzler was not examined separately and apart from her husband by the notary, Perry Cook, in taking her acknowledgment alone, demanded at the hands of the trial court the rendition of the judgment rendered canceling the deed executed by the Metzlers upon the ground that it was void. In the matter of recovering her land conveyed in a manner not binding upon her, the wife, where the purchaser knows, or is charged with knowledge, of the vice of the conveyance, is entitled to an unconditional recovery, that is, a judgment of rescission, for such a transaction, as shown in the present case, cannot be ratified by accepting a part of the purchase money, nor can an estoppel be created against her by a failure to return the money so paid her; to do so would emasculate the statute (Rev.St.1925, arts. 6605, 6608) requiring her conveyances to be in a particular form and in a particular manner.

In volume 23, § 275, of Texas Jurisprudence, it is said: "It is well settled that a married woman is not estopped by her invalid deed to recover her property upon the plea she has accepted and retained the consideration therefor. Perforce of the statute, the title to her separate real estate or her right in the homestead can pass only through a conveyance executed in the manner required by law. Nothing she may do will take the place of such instrument; neither acquiescence, ratification, waiver or estoppel upon such grounds will preclude her recovery. To permit such pleas would emasculate the statute. Accepting benefits is but a species of ratification and cannot take the place of the deed. A purchaser must be held to know as matter of law that her title can only be passed in the manner prescribed by law."

In volume 23, § 206, of Texas Jurisprudence, it is said: "Where her contract is in form a conveyance or instrument not executed in compliance with the requirements of law, it is a nullity and may be rescinded—if such expression be allowed—without the necessity of returning or offering to return any consideration received. Such instrument is void; and here again her repudiation is not a pure rescission."

Many authorities are cited in support of the rule announced. Texas Jurisprudence, vol. 7, § 51, p. 968; McLaren v. Jones, 89 Tex. 131, 33 S.W. 849; Green v. Hopper (Tex.Civ.App.) 278 S.W. 286; Silcock v. Baker, 25 Tex.Civ.App. 508, 61 S.W. 939; Texas Jurisprudence, vol. L, §§ 127, 128, pp. 530, 531; City of San Antonio v. Grandjean, 91 Tex. 430, 435, 41 S.W. 477, 44 S.W. 476.

■ Appellants contend that it appears from the evidence that plaintiffs had retained and spent, and did not return to defendants, the $100 given for the execution of the deed sought to be canceled; wherefore the court erred in submitting to the jury the issue as to whether or not such deed was procured from plaintiffs by the fraudulent representations of Keels and Cook. The submitted issue here referred to reads as follows:

"Do you find from a preponderance of the evidence that the defendant, Carl O. Keels, on March 17th, 1933, represented to the plaintiff, Ella Metzler and husband, E. A. Metzler, that the mineral interest sought to be purchased, and which would be conveyed by the mineral and royalty deed presented to them for their execution, conveyed only an undivided one-half (½) of the one eighth (⅛) royalty interest owned by Mrs. Ella Metzler in an undivided twelve and one half (12½) acre interest out of the 50 acre Allwelt tract out of the Joseph House survey in Harris County, Texas.

"Answer 'He did' or 'He did not,' as you find the facts to be."

The jury upon ample evidence answered the inquiry "He did." We think the inquiry was properly submitted. If, however, we are in error in holding that the submission of such issue was not error, we are of opinion that the submission thereof constitutes no reversible error, for, under the overwhelming evidence to the effect that Mrs. Metzler was not examined separately and apart from her husband by the notary who purported to take her ac-

knowledgment to the deed in question, the jury would not probably have been in any manner influenced in making their finding that the notary did not examine Mrs. Metzler separately and apart from her husband, which finding alone demanded at the hands of the court the rendition of the judgment entered.

In his argument to the jury, John B. Warren, counsel for plaintiff, made the following statement: "These defendants, Cook and Keels, were snooping around, going out to this house when they were not invited, like a thief in the night."

Such argument was objected to at the time it was made, and the court instructed the jury not to consider it.

The objection urged by appellants to such argument is that the same was without the record, immaterial, irrelevant, prejudicial, and intended to inflame the minds of the jury. Appellants here insist that such argument constitutes cause for reversal of the judgment rendered.

We overrule the contention. While the language used was vigorous, we agree with counsel for plaintiffs that it was but an inference drawn from the evidence relative to the fraud alleged and testified to by several witnesses. Mr. Metzler testified that Cook, the notary, told Mrs. Metzler that the deed was a conveyance for one-half interest only in her royalties. Emil Metzler and Arthur Metzler and Mrs. Metzler each testified that Cook told Mrs. Metzler the deed was a conveyance to one-half of Mrs. Metzler's interest in the land. There was an allegation by plaintiffs that Carl O. Keels had been acting as the agent and attorney in fact for the plaintiffs in respect to other properties, and had obtained their confidence and trust, and there was testimony introduced in proof of such allegation. Under the circumstances stated, we are of opinion that the argument is no ground for a reversal of the judgment rendered.

We have considered all assignments made by appellants for reversal of the judgment not hereinbefore disposed of, and overrule them without discussion. For the reasons pointed out, the judgment is affirmed.

Affirmed.

PLEASANTS, C. J., dissenting.